IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LINDA ORTIZ CARRANZA, | § | |
| *Plaintiff,* | § § § | SA-22-CV-00025-ESC |
| vs. | § § | |
| SHELTON & VALADEZ, P.C., | § § | |
| *Defendant.* | § § | |

**ORDER**

Before the Court in the above-styled cause of action is Defendant's Motion for Summary Judgment [#31]. The District Court transferred this case to the docket of the undersigned after all parties consented to the jurisdiction of a United States Magistrate Judge on June 3, 2022 [#10]. The undersigned therefore has authority to issue this Order pursuant to 28 U.S.C. § 636(c). In evaluating the merits of Defendant's motion, the Court has considered Plaintiff's response [#31] and Defendant's reply [#34]. For the reasons that follow, the Court will **grant** the motion.

**I.  Background**

This is a case alleging a hostile work environment in violation of Title VII of the Civil Rights Act of 1964 (Title VII), the Age Discrimination in Employment Act of 1967 (ADEA), and the Texas Labor Code. Plaintiff Linda Ortiz Carranza, proceeding *pro se*, filed this action in state court against Defendants Shelton & Valadez, P.C., and Robert A. Valadez, alleging age discrimination and harassment. Plaintiff's Original Petition, which remains the live pleading, alleges that she was formerly employed by the law firm of Shelton and Valadez as the legal

assistant to Mr. Valadez from August to September 2020. (Orig. Pet. [#1-1], at 4.) During her brief time with the law firm, Plaintiff contends she was subjected to offensive verbal abuse regarding her age and other improper comments, amounting to a hostile work environment, which became so severe that she was forced to resign her employment. (*Id.*) Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) and received her Notice of Right to Sue on October 18, 2021. (Right to Sue Ltr. [#1-1], at 13.) Plaintiff timely filed suit on December 17, 2021, and Defendants removed the case to federal court on the basis of federal question jurisdiction on January 13, 2021.

Following removal, Mr. Valadez filed a partial motion to dismiss, seeking dismissal of all claims against him individually. The Court granted the motion because no individual liability exists under Title VII, the Texas Labor Code, or the ADEA. Shelton & Valadez, the law firm, has now moved for summary judgment as to all of Plaintiff's claims. The motion is ripe for review.

## II.  Summary Judgment Standard

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it

believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323.  Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).  The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).  "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F.3d at 174.

The Fifth Circuit has held that a plaintiff's *pro se* status does not relieve her of the duty to properly support a response to a motion for summary judgment. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).  The Rules of Civil Procedure and this Court's Local Rules are sufficient to apprise a *pro se* plaintiff of the potential consequences of failing to submit competent summary judgment proof, such as opposing declarations or affidavits; no additional notice is required. *Id.*

### III.  Summary Judgment Record

The summary judgment record establishes the following disputed and undisputed facts. Mr. Valadez is a founding partner of the law firm of Shelton & Valadez. (Valadez Decl. [#31-2], at ¶ 2.)  He hired Plaintiff on August 13, 2020, as a legal assistant. (*Id.* at ¶ 3.)  At the time of hiring, Mr. Valadez was 60 years old, and Plaintiff was 58. (*Id.* at ¶ 6.)

According to Plaintiff, from the very first day of her employment, she experienced Mr. Valadez frequently screaming and cussing in the workplace. (Plaintiff Dep. [#31-6], at 95:15–25.) In her deposition, Plaintiff described Mr. Valadez as consistently "very aggressive" and yelling frequently "at the top of his lungs" . . . "to the point of his face turning almost reddish purple." (*Id.* at 105:6–16; Plaintiff Decl. [#32], at 10.) Plaintiff testified that she overheard Mr. Valadez calling another employee a "sloth" every day of her employment and described his favorite term for his employees as "F'ing idiot." (Plaintiff Dep. [#31-6], at 157:6–16.) Plaintiff also recalls Mr. Valadez calling her "incompetent" and "stupid" on one occasion. (*Id.* at 91:12–21, 96:12–14.) According to Mr. Valadez, Plaintiff's performance was not satisfactory, and he privately requested that the firm locate a replacement legal assistant on September 4, 2020, just weeks after she began her work with the firm. (Valadez Decl. [#31-2], at ¶ 8.)

In terms of specific conduct aimed at Plaintiff, Plaintiff testified that Mr. Valadez harassed her by calling her "vieja," the Spanish word for "old lady," every day of her employment for the first couple of weeks. (Plaintiff Dep. [#31-6], at 152:3–7.) According to Mr. Valadez, this was a term used in a friendly manner as part of the working relationship, and Plaintiff would frequently refer to Mr. Valadez as "viejo," the term for "old man," in return. (Valadez Decl. [#31-2], at ¶ 10.) Plaintiff denies that she ever used this term for Mr. Valadez. (Plaintiff Decl. [#32], at 10.) According to Plaintiff, Mr. Valadez made other age-related discriminatory remarks towards Plaintiff regarding the color of her hair and the need for hearing aids because of her age. (*Id.*) Plaintiff testified that Mr. Valadez asked her why she did not color her hair, claiming it made her look old, and told her the firm would pay for her to color it. (Plaintiff Dep. [#31-6], at 98:2–8.)

Plaintiff asserts that she complained to Wade Shelton, another partner in the firm, that Mr. Valadez was creating a hostile work environment because of the way he screamed and yelled at everyone in the office all day long and because of age-based harassment, but nothing was done to improve the situation. (*Id.* at 107:2–11.) Plaintiff testified that the incidents with Mr. Valadez decreased in the last week or so of her employment because she intentionally avoided interacting with him to protect herself from the harassment. (*Id.* at 153:10–17.)

Plaintiff also contends there was an incident in which Mr. Valadez bullied Plaintiff about her hearing. This allegation is supported by a declaration by Melvina Turner, Director of Firm Litigation, who allegedly witnessed the incident. According to Ms. Turner, Mr. Valadez accused Plaintiff of being deaf because she was not responding to his calls for her over a loud printer/copy machine. (Turner Decl. [#32], at 56.) Ms. Turner's declaration states that she heard Mr. Valadez yell at Plaintiff in a bullying manner, "YOU KNOW YOU'RE DEAF," and directed Plaintiff to get her hearing checked, stating that the firm would pay for her hearing aids. (*Id.* at 56.)

According to Mr. Valadez, Plaintiff also had commented on his grey hair and asked him if he had hearing problems. (Valadez Decl. [#31-2], at ¶ 10.) In response, Mr. Valadez claims he informed Plaintiff that he also wore hearing aids. (*Id.*) Plaintiff maintains that she never knew Mr. Valadez wore hearing aids. (Plaintiff Decl. [#32], at 10.)

According to Plaintiff, she was "deeply insulted" by the hearing-aid incident and submitted her resignation by the end of that same day on September 11, 2020. (EEOC Charge [#31-2], at 2–3; Valadez Decl. [#31-2], at ¶ 9; Resignation [#31-5], at 2.) Plaintiff's EEOC Charge, filed in January 2021, specifically details the hearing-aid incident consistent with the description in Ms. Turner's declaration. (EEOC Charge [#31-2], at 2.) The Charge also

recounts Mr. Valadez's use of the term "vieja," but admits that he eventually stopped using the term after she requested he do so. (*Id.*) The Charge further states that Mr. Valadez would yell other offensive comments at Plaintiff, such as, "You are not worth the money I pay you," and would bully Plaintiff and other staff members of the law firm. (*Id.*)

When asked at her deposition regarding who in the office was the target of Mr. Valadez's ire and aggression, Plaintiff stated that Mr. Valadez behaved this way with most people in the office and that his behavior affected everyone in the office. (Plaintiff Dep. [#31-6], at 95:15–25, 105:6–16.) Plaintiff further testified that everyone in the office was subjected to Mr. Valadez's hostility except for a few secretaries with whom Mr. Valadez did not work or have daily interactions. (*Id.* at 107:12–20.) Plaintiff conceded that Mr. Valadez expressed his anger in the workplace towards all employees, regardless of race, age, and gender. (*Id.* at 128:17–129:6.)

Ms. Turner's declaration makes consistent statements regarding the indiscriminate nature of Mr. Valadez's behavior and the firm's awareness of it. According to Ms. Turner, the firm allowed Mr. Valadez to create a hostile work environment by letting him "yell, scream, berate, harass, taunt and bully anyone who worked on his team, and others in the office." (Turner Decl. [#32], at 56.) Ms. Turner's declaration lists over 15 other employees who were specifically harassed by Mr. Valadez. (*Id.* at 57.)

Ms. Turner's declaration specifically describes Mr. Valadez's bullying of Human Resources Director, Alma Fann, and states that he was constantly yelling at her, berating her, taunting her, harassing her and bullying her to the point that Ms. Fann would not enter his office unaccompanied. (*Id.*) Ms. Turner herself also claims to have struggled with Mr. Valadez's behavior and attributes her own resignation in February 2021 to his bullying, stating that she "could no longer take the hostility, verbal abuse, taunting, screaming, yelling, cursing, and

general behavior of Mr. Valadez." (*Id.*) According to Ms. Turner, Mr. Shelton was aware of the issues with Mr. Valadez and had prayed on several occasions with Ms. Turner and Ms. Fann about the bullying because they were all so distraught over the behavior. (*Id.* at 56.)

## IV. Analysis

The Court will grant Defendant's motion for summary judgment. Before addressing the merits of the motion, several preliminary matters must be addressed.

**A.     This case arises solely under the ADEA and Texas Labor Code.**

Plaintiff's Original Petition pleads claims of age discrimination and a hostile work environment under Title VII, the ADEA, and the Texas Labor Code. (Orig. Pet. [#1-1], at 4–6.) Defendant argues this case should be analyzed only under the ADEA and Texas Labor Code. The Court agrees.

Age-based discrimination and harassment claims are not cognizable under Title VII. *See* 42 U.S.C. § 2000e–2(a)(1) (prohibiting discrimination on the basis of "race, color, religion, sex, or national origin"); *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012) (recognizing that Title VII does not protect from a hostile work environment or discrimination on the basis of age). Plaintiff's live pleading does not allege harassment based on any other characteristic protected under Title VII. Additionally, the Court notes that Plaintiff's response in opposition to the motion for summary judgment refers to claims under the Americans with Disabilities Act. (Resp. [#32], at 4.) Plaintiff's live pleading does not contain ADA claims, and, therefore, these claims have not been considered by the Court. Accordingly, the Court construes the pleadings solely under the ADEA and Texas Labor Code.

**B.     The Court will dismiss as moot Defendant's objections to Plaintiff's summary judgment evidence.**

Defendant has objected to some of the arguments and assertions in Plaintiff's summary judgment briefing as unsupported by any competent summary judgment and as hearsay. The Court has reviewed Defendant's arguments and the evidence at issue and will dismiss the objections as moot. The Court has not considered any of the challenged evidence or arguments in reaching its conclusion that Defendant's motion for summary judgment should be granted.

**C.     Plaintiff has not established prejudice related to the Rule 30(b)(6) deposition of Wade Shelton.**

Finally, Plaintiff complains to the Court that she was unable to fully conduct the corporate representative deposition of Mr. Shelton because he refused to answer all of her questions. The Court has considered Plaintiff's argument but finds that she suffered no prejudice during the deposition. The topics for the Rule 30(b)(6) deposition were limited by the Court to Defendant's policies and procedures on harassment and discrimination, including policies that address how to report and to whom to report such issues and Defendant's handling and response to such reports. (Order [#30], at 2.) Plaintiff contends that Defendant's attorney improperly objected to numerous questions she attempted to ask in the deposition and that these objections unfairly limited the scope of the deposition. The Court has reviewed Mr. Shelton's deposition and finds that Plaintiff's arguments are without merit. Plaintiff repeatedly attempted to question Mr. Shelton on topics outside of the scope of the deposition limited by the Court. For example, Plaintiff attempted to ask Mr. Shelton about Defendant's financial information, the hiring of employees, the loss of employees in recent years (ostensibly due to Mr. Valadez's behavior), and factual incidents involving Mr. Valadez and other employees beyond the reporting of those

incidents to the firm and its response. (Shelton Dep. [#32], at 23–29.) Plaintiff has not identified how she was prejudiced by these objections.

Additionally, Rule 56(d) provides a mechanism for a party to argue that a motion for summary judgment should not be considered because there is specific discovery necessary to the resolution of the motion that has not been obtained or permitted. *See* Fed. R. Civ. P. 56(d) (permitting a court to defer considering a summary judgment motion or denying it if "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition"). Plaintiff does not reference this rule in her response but seems to be arguing that her inability to pursue certain lines of questioning in the deposition of Mr. Shelton had deprived her of facts essential to her opposition to Defendant's motion.

To the extent Plaintiff is attempting to invoke Rule 56(d), the Court finds that Plaintiff has not presented an affidavit or declaration showing specific reasons that the discovery at issue pertains to Defendant's motion. Rather, Plaintiff seems to be arguing that the allegations of hostile work environment in this case should not be limited to *age-based* harassment and that she should have been permitted to question Mr. Shelton on all types of harassment leading to a hostile work environment. As detailed *infra*, Plaintiff's pleadings state claims for age discrimination and harassment, and federal law does not protect Plaintiff (or other employees) from general harassment in the workplace unrelated to a protected characteristic. Moreover, to reiterate, Mr. Shelton's deposition was limited to specific topics and he was deposed in his capacity as a corporate representative of Defendant, not as a factual witness regarding Mr. Valadez's conduct. The Court finds that Plaintiff had a full and fair opportunity to depose Mr. Shelton in line with the Court's previous rulings, and no relief is warranted under Rule 56(d) or otherwise.

**D.     Plaintiff's claim of age discrimination based on a hostile work environment fails as a matter of law.**

Plaintiff alleges that Defendant discriminated against her "by creating and allowing a hostile work environment because of Plaintiff's age." (Orig. Pet. [#1-1], at 6.) The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The Fifth Circuit recognizes a hostile work environment claim based on age discrimination under the ADEA. *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011). Because age discrimination claims brought under the Texas Labor Code are evaluated under the same analytical framework as ADEA claims, the analysis of Plaintiff's ADEA claim, which follows, applies with equal force to her Texas Labor Code claim. *Reed*, 701 F.3d at 439.

To establish a prima facie case of harassment alleging a hostile work environment under the ADEA, an employee must raise a genuine dispute of material fact or prove: (1) that she belongs to a protected class (i.e., was over the age of 40); (2) she was subject to unwelcome harassment, either through words or actions; (3) the harassment complained of was based on her age; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (describing elements of hostile work environment based on race under Title VII); *Reed*, 701 F.3d at 442–43 (describing elements of hostile work environment claim based on age under ADEA and Texas law).

Defendant contends that Plaintiff cannot prevail on her cause of action for discrimination based on a hostile work environment because she cannot prove that the complained-of harassment was age-based. The Court agrees. The Supreme Court has explained that the

10

"critical issue" in determining whether workplace activities constitute harassment based on a protected characteristic is "whether members of one [protected class] are exposed to disadvantageous terms or conditions of employment to which members of the other [class] are not exposed." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (citation omitted).  In the context of Title VII, the Fifth Circuit has commented that federal anti-discrimination law "is not a shield against harsh treatment at the workplace; it protects only in instances of harshness disparately distributed." *Reine v. Honeywell Int'l Inc.*, 362 Fed. App'x 395, 397 (5th Cir. 2010) (quoting *Jackson v. City of Killeen*, 654 F.2d 1181, 1186 (5th Cir. 1981)).  When the conduct is equally harsh towards men and women, for example, there is no hostile work environment based on sex. *See Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 270–71 (5th Cir. 1998). Plaintiff thus bears the burden here to demonstrate that Mr. Valadez's behavior towards employees over age 40 was more severe than his treatment of younger employees. *See Reine*, 362 Fed. App'x at 398.  She has failed to do so.

The undisputed summary judgment evidence establishes that Mr. Valadez acted with aggression and hostility towards all of Defendant's employees, except for the few with whom he did not come into contact. Plaintiff herself testified repeatedly in her deposition that Mr. Valadez expressed his anger in the workplace towards all employees, regardless of race, age, and gender. (Plaintiff Dep. [#31-6], at 95:15–25, 105:6–16, 107:12–20, 128:17–129:6.)  Ms. Turner described the workplace similarly, detailing incidents of harassment and abuse in the workplace towards Plaintiff and other employees, such as Ms. Fann and herself, and listed over 15 employees in addition to Plaintiff who were subjected to the hostile work environment. (Turner Decl. [#32], at 56–57.)  Importantly, according to a declaration by Shelton & Valadez's

11

custodian of records, five of these employees were under age 40 during Plaintiff's employment. (Giltner Decl. [#34-1], at 1.)

Plaintiff argues in her response that, although Mr. Valadez made derogatory remarks towards other employees, his age discrimination was solely directed at Plaintiff. This is not enough on the current record. Although Plaintiff has identified three incidents in which Mr. Valadez made comments regarding her age, such as Mr. Valadez's use of the term "vieja" and offensive comments regarding Plaintiff's hair color and hearing, the summary judgment record does not support Plaintiff's position that she was subjected to a hostile work environment *because of* her age. Rather, Plaintiff's description of Mr. Valadez's workplace behavior, if true, demonstrates that Mr. Valadez chastised his employees indiscriminately for all sorts of reasons, including reasons unrelated to any protected characteristic, and that his behavior is rooted in his own deficiencies in communication skills and management of his emotions rather than in his disparate treatment of or discrimination against employees based on age.

Defendant further argues that, even if Plaintiff could demonstrate that the problematic behavior by Mr. Valdez was indeed age-based, she cannot show that the harassment affected a term, condition, or privilege of employment. This required element of Plaintiff's cause of action is met only if the harassment was "sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment." *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999); *Ramsey*, 286 F.3d at 268. To be actionable, the work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). To determine whether an environment was objectively offensive, courts consider the totality of the circumstances, including the frequency of the conduct, its

12

severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with the employee's work performance. *E.E.O.C. v. WC & M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007).

Not all harassment in the workplace is actionable. The "mere utterance of an . . . epithet" that engenders "offensive feelings" in an employee "does not sufficiently affect the conditions of employment." *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999) (internal quotation and citation omitted). On the other hand, a single incident of harassment that is sufficiently severe or a "continuous pattern of much less severe incidents of harassment" may give rise to a viable claim for hostile work environment under the totality of the circumstances test. *WC & M Enters., Inc.*, 496 F.3d at 400. Importantly, when evaluating the pervasiveness of the harassment, the Court must consider whether the harassment at issue is discriminatory harassment (here, age-based). *See Reed*, 701 F.3d at 442–43 (defining actionable harassment under ADEA as age-based harassment).

Viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff was subjected to generally hostile and offensive behavior by Mr. Valadez in her work environment. However, the record does not depict age-based harassment sufficiently severe or pervasive to alter a term or condition of employment. The only three incidents detailed in the summary judgment record involve Mr. Valadez taunting Plaintiff about her hair and hearing on two occasions over a one-month period and referring to Plaintiff daily for the first two weeks of employment as "vieja." Plaintiff has provided the Court with testimony supporting the finding that she found these statements and incidents to be subjectively offensive, but she does not provide the Court with any evidence as to how the offensive comments altered a term or condition of employment. These incidents, though subjectively and arguably objectively

offensive, do not rise to the level of altering a term or condition of employment. *See id.* at 443. Additionally, Plaintiff's EEOC Charge states that after she complained to Mr. Valadez about the use of the term "vieja," he ceased calling her by this term. (EEOC Charge [#31-2], at 2.)

This high standard for judging hostility in the context of employment is specifically intended to prevent the federal anti-discrimination statutes from becoming a "general civility code" for the workplace. *Faragher*, 524 U.S. at 788 (citation omitted). Occasional age-based comments, including references to an employee as "old man" and "old fart" do not rise to the level of severity required to prove a hostile work environment under the ADEA. *See Reed*, 701 F.3d at 443.

In summary, Plaintiff cannot prevail on her claim of age discrimination based on a hostile work environment because the summary judgment record does not establish a plausible basis for finding that she was the victim of disparate treatment and harassment based on her age. Nor is Plaintiff able to establish that the hostile working conditions were severe or pervasive enough to alter a condition or term of her brief employment with Defendant.

**C.     Insofar as Plaintiff is attempting to assert a separate claim based on constructive discharge, this claim also fails as a matter of law.**

Finally, Defendant also argues in its motion that Plaintiff cannot prevail on her claim of age discrimination based on constructive discharge. The Court does not construe Plaintiff's Petition as asserting a separate age discrimination claim based on constructive discharge, but if the Court were to do so, Plaintiff cannot prevail on this claim either. To prove constructive discharge, Plaintiff must establish that there are conditions of employment of a "greater severity or pervasiveness of harassment than the minimum required to prove a hostile work environment." *Landgraf v. USI Film Prods., Co.*, 968 F.2d 427, 430 (5th Cir. 1992). As Plaintiff's hostile work environment claim fails, it necessarily follows that her constructive

14

discharge claim fails as well. *See Singleton v. RPM Pizza, Inc.*, 182 Fed. App'x 292, 293 (5th Cir. 2006) ("The jury's finding of no hostile work environment necessarily precluded plaintiffs' claims of constructive discharge.").

Moreover, to prove constructive discharge, an employee must offer evidence that the employer made the employee's working conditions so intolerable that a reasonable employee would feel compelled to resign. *Brown v. Bunge Corp.*, 207 F.3d 776, 781–82 (5th Cir. 2000). "Discrimination alone, without aggravating factors, is insufficient for a claim of constructive discharge." *Bye v. MGM Resorts Int'l, Inc.*, 49 F.4th. 918, 925 (2022) (quotation and citation omitted). Whether a reasonable employee would feel compelled to resign depends on the facts of each case, but courts consider the following factors relevant, singly or in combination: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status]. *Brown*, 207 F.3d at 781–82.

There is no evidence before the Court raising a genuine issue of material fact with respect to the above-referenced aggravating factors to support a finding of constructive discharge. Plaintiff was not demoted; nor did she receive a reduction in job responsibilities or salary or reassignment to menial or degrading work. Plaintiff's work responsibilities, salary, and supervisor also never changed during her short one-month period of employment. Additionally, neither Mr. Valadez nor anyone else at the firm offered Plaintiff early retirement or continued employment on less favorable terms. The fact that Plaintiff subjectively felt compelled to resign based on Mr. Valadez's harsh treatment is insufficient to raise a genuine issue of material fact on

the matter, where the age-based harassment was not severe or pervasive enough to constitute a hostile work environment. *See Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 482 (5th Cir. 2008) (subjective belief that resignation is the "only viable option" is insufficient to prove constructive discharge).

In summary, Plaintiff's evidence, accepted as true, establishes that Mr. Valadez created an abusive working environment for not just Plaintiff, but numerous other employees of Defendant, including employees who were under the age of 40. Moreover, the abusive and uncivil manner in which he treated Plaintiff did not rise to the level of actionable age-based discrimination. The Court will therefore grant Defendant's motion for summary judgment.

**IT IS THEREFORE ORDERED** that Defendant's objections to Plaintiff's summary judgment evidence are dismissed as moot.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment [#31] is **GRANTED** as to all of Plaintiff's claims.

SIGNED this 10th day of January, 2023.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE